UNITED STATES of America,
Appellee,

v.

Claver COLE, Defendant–Appellant,

Keysha McCall, Defendant.

No. 00–1777.

United States Court of Appeals,
Second Circuit.

Nov. 6, 2001.

Lawrence D. Gerzog, Law Office of Lawrence D. Gerzog, New York, NY, for appellant.

Marshall L. Miller, Assistant United States Attorney; Loretta E. Lynch, United States Attorney for the Eastern District of New York; Emily Berger, of counsel, New York, NY, for appellee.

Present CARDAMONE, WINTER and SACK, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court, entered on November 1, 2000, be, and it hereby is, AFFIRMED.

Defendant–Appellant Claver Cole appeals from a judgment of the United States District Court for the Eastern District of New York (Reena Raggi, *Judge*) convicting him of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(B)(ii)(II), 18 U.S.C. § 3551 *et seq.*, and attempted possession of cocaine with intent to distribute, *id.* Judge Raggi sentenced Cole to fifty-one months' imprisonment, five years of supervised release, and a fine of $200.

Cole makes two principal claims on appeal: that the district court erred by declining to suppress evidence seized during his arrest on the grounds that the arresting officers allegedly lacked probable cause; and that the court improperly permitted the Government to introduce evidence of Cole's prior arrest to establish his intent and knowledge pursuant to Fed. R.Evid. 404(b).

*Existence of Probable Cause*

Detective Brosnan, an agent of the United States Customs Service, arrested the defendant on April 16, 2000. With the cooperation of co-defendant Keysha McCall, whom customs agents had arrested at JFK International Airport several hours earlier for trafficking cocaine from Jamaica concealed in her purse and shoes, Brosnan set up a surveillance operation to apprehend the other participants in this drug-trafficking scheme.

Brosnan instructed McCall to telephone her contacts, whom she knew as "Germaine, Paul, and Broomy," to agree on a pick-up location. Brosnan then escorted McCall to that location, the lobby of the JFK International Arrivals Terminal. There, from a distance of about twenty to thirty feet, Brosnan observed the defendant enter the lobby and sit down next to McCall. While McCall spoke to him, the defendant appeared to speak into a cell phone and continued to stare straight ahead without acknowledging her. About thirty seconds later, however, he stood and walked towards the exit, and McCall followed him after about ten seconds. Before reaching the exit, she turned towards Detective Brosnan and, according to his testimony, "gave [him] the eyebrows, like this is the person."

Brosnan and several other agents followed the defendant and McCall at a distance. He observed them walk to a parked car. As he walked, the defendant frequently turned his head from side to side and glanced at McCall. Upon reaching the parked car, Cole turned around, while a man in the driver's seat got out and began to open the trunk. Brosnan and the other officers then moved in and arrested the defendant, the driver, and another individual seated in the rear of the car.

■ Cole claims that this sequence of events could not establish probable cause as a matter of law. Probable cause exists if police "officers have knowledge or reasonably trustworthy information of facts

and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983) (citing *Dunaway v. New York*, 442 U.S. 200, 208 & n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). The "facts and circumstances" from which an officer may infer probable cause need not reach "the level of evidence necessary to support a conviction," but they must be "more than rumor, suspicion, or even a 'strong reason to suspect.'" *Id.* at 375 (citing *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) (internal quotation marks omitted)). An officer "may draw inferences based on his own experience in deciding whether probable cause exists," *Ornelas v. United States*, 517 U.S. 690, 700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and we "give due weight to the trial court's finding that the officer was credible and the inference was reasonable," *id.*

■ Nothing in the record indicates that the district court abused its discretion in determining that Detective Brosnan had probable cause to arrest the defendant. Judge Raggi found the arresting officer, Detective Brosnan, to be credible, and the "facts and circumstances," *Fisher*, 702 F.2d at 375, from which Brosnan inferred that Cole was engaged in criminal conduct were far more substantial than mere rumor or suspicion. Brosnan had credible information from an informant, co-defendant McCall, that a participant in the drug-trafficking scheme would pick her up at the International Arrivals Terminal. He then observed defendant Cole act in a suspicious manner, from which a reasonable person could certainly infer that Cole was that participant.

The facts and circumstances in each of the cases cited by the defendant to dispute

probable cause—*Fisher, United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), and *United States v. Jenkins*, 876 F.2d 1085 (2d Cir.1989)—are distinguishable from those present here. In the former two cases, the arresting officers relied on suspicions found to be unreasonable because they did not indicate the defendants' personal participation in the crime for which they were arrested. *See Fisher*, 702 F.2d at 374–75; *Di Re*, 332 U.S. at 583, 68 S.Ct. 222. Here, by contrast, the information provided by McCall and Detective Brosnan's personal observations implicated the defendant directly. In *Jenkins*, we held that probable cause did not exist because the arresting agents of the FBI had information indicating at best that the defendant "would commit a crime *in the future.*" *Jenkins*, 876 F.2d at 1089. Here, by contrast, Detective Brosnan had credible information from which he could infer that the defendant was *presently* engaged in a crime.

We conclude that Brosnan had probable cause to arrest the defendant, and the trial court therefore did not err by refusing to suppress the evidence that resulted from his arrest.

*Admissibility of Evidence of the Defendant's Prior Arrest*

■ The defendant also challenges the district court's decision to permit the Government to introduce evidence of his prior arrest for the purpose of proving his knowledge and intent pursuant to Fed. R.Evid. 404(b).

On July 21, 1996, customs agents arrested Cole, then a juvenile, after he arrived at Miami Airport from Jamaica. They charged him with possession of liquid-form cocaine concealed in two Jamaican rum bottles. The State did not prosecute him, however, apparently because of the defendant's age. The Government sought to introduce evidence of this arrest to prove

the defendant's knowledge and intent, elements of the charged crimes that the defendant intended to dispute at trial.

To determine the admissibility of prior bad-acts evidence pursuant to Fed.R.Evid. 404(b), we apply the test established by the Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). *See United States v. Ramirez*, 894 F.2d 565 (2d Cir.1990). *Huddleston* requires trial courts to assess (1) whether the evidence is offered for a "proper purpose" under Rule 404(b); (2) whether the evidence is relevant under Rules 401 and 104(b); and (3) whether the probative value of the evidence outweighs its potential unduly to prejudice the defendant, *see id.* at 691, 108 S.Ct. 1496. The trial court should also give an appropriate limiting instruction to the jury at the request of the defendant. *See id.* at 691–92, 108 S.Ct. 1496.

The district court satisfied each of these requirements. First, the use of prior bad-acts evidence to show knowledge and intent where, as here, the defendant disputes these elements, is a "proper purpose." *See* Fed.R.Evid. 404(b); *see also United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir.1996) (citing *United States v. Harris*, 733 F.2d 994, 1006 (2d Cir.1984)). Second, the evidence of Cole's prior arrest is "relevant" because it has a "tendency to make the existence of any fact that is of consequence"—here, whether or not the defendant possessed the knowledge and intent to participate in a drug-trafficking scheme—"more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *see United States v. Jackson*, 12 F.3d 1178, 1182 (2d Cir.1993). Third, the record on appeal shows that the district court properly and carefully weighed the probative value of the evidence against its potential for unfair prejudice. Fourth and finally, before the prose-cution introduced evidence of Cole's prior arrest, Judge Raggi delivered a clear limiting instruction to the jury, emphasizing that the evidence should be considered solely for its probative value as to the defendant's knowledge and intent, not for character propensity.

Because the trial court carefully applied each of the factors articulated by the Supreme Court in *Huddleston*, we conclude that it did not abuse its discretion under Fed.R.Evid. 404(b).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.